

SEALED



FILED

OCT 1 0 2019

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. __19 CR 208 GKF__ |
| | ) |
| Plaintiff, | ) __FILED UNDER SEAL__ |
| | ) |
| v. | ) __INDICTMENT__ |
| | ) [18 U.S.C. § 1956(h): Conspiracy to |
| AFEEZ OLAJIDE ADEBARA, | ) Commit Money Laundering; |
| a/k/a "Ade Ade," | ) Forfeiture Allegation: 18 U.S.C. § |
| a/k/a "Sam Ade," | ) 982(a)(1) and 28 U.S.C. § 2461(c) – |
| a/k/a "Ben Obi," | ) Money Laundering Forfeiture] |
| a/k/a "Sam Ola," | ) |
| a/k/a "Alan Altman," | ) |
| a/k/a "Dede Kwame," | ) |
| OLUWASEUN JOHN OGUNDELE, | ) |
| a/k/a "Victor Moses," | ) |
| a/k/a "Mark Sobon," | ) |
| a/k/a "Theodore Segun Davies," | ) |
| a/k/a "Isaac Samuel," | ) |
| a/k/a "John Olu," | ) |
| JOSHUA NNANDOM DITEP, | ) |
| a/k/a "Edward Mark," | ) |
| a/k/a "Phillip Lucas," | ) |
| a/k/a "Sammy Tickar," | ) |
| PAUL USORO, | ) |
| a/k/a "Daniel Lawson," | ) |
| CHIBUZO GODWIN OBIEFUNA, JR., | ) |
| a/k/a "Chibby Obiefuna," | ) |
| a/k/a "Evan Carson," | ) |
| JAMIU IBUKUN ADEDEJI, | ) |
| TOBILOBA KEHINDE, | ) |
| a/k/a "Tobi Kehinde," | ) |
| a/k/a "Jeff Atto," | ) |
| a/k/a "Ari Lawson," | ) |
| FNU LNU #1, | ) |
| a/k/a "Smith Williams," | ) |
| FNU LNU #2, | ) |
| a/k/a "Musa Nelson Bello," | ) |
| FNU LNU #3, | ) |
| a/k/a "Michael Wilson Bryan," | ) |
| | ) |
| Defendants. | ) |

**THE GRAND JURY CHARGES:**

## INTRODUCTION

At all times material to this Indictment:

### The Defendants

1.      **AFEEZ OLAJIDE ADEBARA**, a/k/a "Ade Ade," a/k/a "Sam Ade," a/k/a "Ben Obi," a/k/a "Sam Ola," a/k/a "Alan Altman," a/k/a "Dede Kwame," **("ADEBARA")**, was a citizen of the United States.  **ADEBARA** maintained addresses at Crail Drive, Buckingham Drive, and Cord Circle, in Norman, Oklahoma.  **ADEBARA** was the sole proprietor of a business, TBA Stores, which purported to be a retailer of clothes and shoes.

2.      **OLUWASEUN JOHN OGUNDELE**, a/k/a "Victor Moses," a/k/a "Mark Sobon," a/k/a "Theodore Segun Davies," a/k/a "Isaac Samuel," a/k/a "John Olu," **("OGUNDELE")**, was a citizen of the United States. **OGUNDELE** maintained addresses on Crail Drive in Norman, Oklahoma and on East 52nd Street in Brooklyn, New York.

3.      **JOSHUA NNANDOM DITEP**, a/k/a "Edward Mark," a/k/a "Phillip Lucas," a/k/a "Sammy Tickar," **("DITEP")**, was a citizen of Nigeria and a lawful permanent resident of the United States.  **DITEP** maintained addresses on 13th Place and Beaumont Square in Norman, Oklahoma.

4.      **PAUL USORO**, a/k/a "Daniel Lawson," **("USORO")**, was a citizen of Nigeria and a lawful permanent resident of the United States.  **USORO** maintained an address on 13th Place in Norman, Oklahoma.

2

5.     **CHIBUZO GODWIN OBIEFUNA, JR.,** a/k/a "Chibby Obiefuna," a/k/a "Evan Carson," **("OBIEFUNA")**, was a citizen of the United States.   **OBIEFUNA** maintained addresses on Brandywine Lane and 13th Place in Norman, Oklahoma, and on Lime Avenue in Long Beach, California.

6.     **JAMIU IBUKUN ADEDEJI, ("ADEDEJI")**, was a citizen of Nigeria. **ADEDEJI** maintained an address on Oak Tree Avenue in Norman, Oklahoma.

7.     **TOBILOBA KEHINDE,** a/k/a "Tobi Kehinde," a/k/a "Jeff Atto," a/k/a "Ari Lawson," **("KEHINDE")**, was a citizen of Nigeria and legal permanent resident of the United States.   **KEHINDE** maintained addresses on Ringwood Street and Oak Tree Avenue in Norman, Oklahoma.

8.     **FNU LNU #1,** a/k/a "Smith Williams," **("FNU LNU #1")**, maintained an address on Dumont Avenue in Brooklyn, New York.

9.     **FNU LNU #2,** a/k/a "Musa Nelson Bello," **("FNU LNU #2")**, maintained an address on Empanda Drive in Dallas, Texas.

10.     **FNU LNU #3,** a/k/a "Michael Wilson Bryan," **("FNU LNU #3")**, maintained an address on Royal Lane in Dallas, Texas.

## THE MONEY LAUNDERING CONSPIRACY AND ITS OBJECTS

11.     From sometime in or about 2017 and continuing through the date of this Indictment, more exact dates being unknown to the Grand Jury, in the Northern District of Oklahoma, and elsewhere, the defendants, **AFEEZ OLAJIDE ADEBARA, OLUWASEUN JOHN OGUNDELE, JOSHUA NNANDOM DITEP, PAUL USORO,**

3

**CHIBUZO GODWIN OBIEFUNA, JR., JAMIU IBUKUN ADEDEJI, TOBILOBA KEHINDE, FNU LNU #1, FNU LNU #2,** and **FNU LNU #3,** (collectively known hereinafter as, "the co-conspirators") knowingly combined, conspired, confederated, and agreed, with each other, and with others known and unknown to the Grand Jury, to:

      a. knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, mail fraud and wire fraud, knowing that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds of a specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

      b. knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminal derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1957.

## THE PURPOSES OF THE CONSPIRACY

The purposes of the conspiracy were for the co-conspirators to:

      a. enrich themselves by fraudulently obtaining, and causing to be fraudulently obtained, monies from victims in the Northern District of Oklahoma and elsewhere through the use of "romance scams" via the internet;

      b. conceal and obscure the source of the fraudulently obtained proceeds they received from participation in the "romance scams" by moving the proceeds between and among multiple bank accounts; and

      c. conceal the conspiracy from others.

4

## **MANNER AND MEANS OF THE CONSPIRACY**

The manner and means by which the co-conspirators sought to accomplish and did accomplish the purposes and objects of the conspiracy included the following:

12.     The co-conspirators would and did use online dating websites and social media platforms to defraud victims.

13.     The co-conspirators would and did target victims on websites such as Match.com.

14.     The co-conspirators would and did establish purported relationships with victims by misrepresenting their identities and offering false promises.

15.     The co-conspirators would and did fraudulently induce victims to send money and property to the co-conspirators.

16.     The co-conspirators would and did conceal money and property by depositing them into accounts associated with the co-conspirators.

17.     The co-conspirators would and did create online dating profiles using fake names, locations, images, and personas.

18.     The co-conspirators would and did claim to be residents of the United States who were working abroad.

19.     The co-conspirators would and did build rapport with "romance scam" victims using a variety of means and facilities of interstate communication, including but not limited to email, text message, WhatsApp, and Google Hangouts.

5

20.     The co-conspirators would and did fraudulently represent to "romance scam" victims that they had encountered a financial crisis for which they needed money, funds, and property from victims.

21.     The co-conspirators would and did fraudulently induce "romance scam" victims to conduct and otherwise facilitate financial transactions and shipments on behalf of and for the benefit of the co-conspirators.

22.     The co-conspirators would and did fraudulently represent to "romance scam" victims that they needed money to complete their work.

23.     The co-conspirators would and did fraudulently represent to victims that they needed money in order to facilitate their return to the United States.

24.     The co-conspirators would and did fraudulently promise to repay the "romance scam" victims.

25.     Early in the "romance scam" the co-conspirators would and did make requests that the victims purchase and send small items such as an iTunes gift cards and cellphones.

26.     Later in the "romance scam" the co-conspirators would and did make requests for large sums of money, including requests in excess of tens of thousands of dollars.

27.     The co-conspirators would and did direct "romance scam" victims to send money and property to specific accounts and addresses in the United States.

6

28.    The co-conspirators would and did instruct victims to send funds by electronic funds or wire transfer.

29.    The co-conspirators would and did instruct victims to send cash and money orders through the U.S. mail and other commercial carrier, for example, FedEx.

30.    The co-conspirators would and did receive packages, money, and other property from victims.

31.    The co-conspirators would and did make cash deposits into bank accounts controlled by and associated with the co-conspirators.

32.    The co-conspirators would and did disseminate the fraudulently obtained funds to other members of the conspiracy to conceal the true nature of their fraudulently obtained funds.

33.    The co-conspirators would and did obtain and use fraudulent passports and other identity documents to open bank accounts in fake names.

34.    The co-conspirators would and did provide false information to banks in order to use and maintain their bank accounts.

35.    The co-conspirators would and did use the same residential address to open and maintain many of the bank accounts.

36.    The co-conspirators would and did conceal their identities from the victims by directing the victims to send money to the bank accounts associated with their fake names.

37.    The co-conspirators would and did convert the fraudulently obtained proceeds to their personal use.

38.    The co-conspirators would and did use the fraudulently obtained proceeds to purchase vehicles for their personal use, including but not limited to luxury vehicles.

39.    The co-conspirators would and did use the fraudulently obtained proceeds to purchase and export salvaged vehicles and car parts overseas, usually to Nigeria.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy and to achieve its purposes, the co-conspirators committed the following overt acts, among others, in the Northern District of Oklahoma and elsewhere:

### The Co-Conspirators Opened and Maintained Bank Accounts Using False Identity Documents

40.    In order to receive funds from victims of the conspiracy, the co-conspirators established bank accounts using fraudulent identity documents.  Proceeds from the scheme were deposited into these accounts throughout the conspiracy and funneled to other members of the conspiracy.  The co-conspirators sent and received the fraudulent identity documents and supporting documentation via email, mail, and/or commercial carrier as set forth below:

        a.  On or about March 17, 2017, **ADEBARA** sent an email to an account used by TBA Stores, with the subject line "pix" and attaching a passport photo of **OBIEFUNA**.  The attachment was titled "Chibs.JPG."

8

b. On or about April 4, 2017, **ADEBARA** sent an email to an account used by TBA Stores, with the subject line "Other" and attaching a passport photo of **KEHINDE**. The attachment was titled "TK.jpg." The email included identifiers for the alias "Jeff Atto," to include date of birth, telephone number, and **KEHINDE**'s Oak Tree Avenue address.

c. On or about April 8, 2017, **KEHINDE** received a package at the Oak Tree Avenue address from an individual in Lagos, Nigeria. The package contained a fraudulent passport with **KEHINDE**'s photo using the alias "Jeff Atto." The photo used in the passport is the same one that was sent via email by **ADEBARA** on or about April 4, 2017.

d. On or about May 2, 2018, **OBIEFUNA** sent an email to **ADEBARA**, attaching multiple passport-style photos of **OBIEFUNA**. **ADEBARA** forwarded the email to an account associated with TBA Stores with the subject line "Important."

41. On or about the dates identified below, the co-conspirators established the following accounts:

| HEREINAFTER | DATE | BANK | ACCOUNT NUMBER | NAME ON FRAUDULENT PASSPORT, IF USED | DEFENDANT |
|---|---|---|---|---|---|
| **DITEP** Chase Account 1 | September 2, 2015 | Chase Bank | x6172 | None | **DITEP** |
| **ADEBARA** BOA Account | February 2, 2017 | Bank of America | x3512 | Dede Kwame (alias) | **ADEBARA** |
| **ADEBARA** Chase Account | February 2, 2017 | Chase Bank | x3502 | Dede Kwame (alias) | **ADEBARA** |

9

| | | | | | |
|---|---|---|---|---|---|
| **ADEBARA** Arvest Account | July 20, 2017 | Arvest Bank | x6484 | None | **ADEBARA** |
| **USORO** Chase Account | July 28, 2017 | Chase Bank | x8862 | Daniel Lawson (alias) | **USORO** |
| **USORO** BOA Account | August 7, 2017 | Bank of America | x3434 | Daniel Lawson (alias) | **USORO** |
| TBA Stores Arvest Account | August 11, 2017 | Arvest Bank | x6659 | None | **ADEBARA** |
| **DITEP** BOA Account | October 13, 2017 | Bank of America | x8857 | Edward Mark (alias) | **DITEP** |
| **DITEP** Chase Account 2 | October 17, 2017 | Chase Bank | x0389 | Edward Mark (alias) | **DITEP** |
| **OBIEFUNA** Chase Account | January 18, 2018 | Chase Bank | x2116 | Evan Carson (alias) | **OBIEFUNA** |
| **FNU LNU #1** Chase Account | March 1, 2018 | Chase Bank | x9515 | Smith Williams (alias) | **FNU LNU #1** |
| **OGUNDELE** Chase Account | March 20, 2018 | Chase Bank | x1975 | Victor Moses (alias) | **OGUNDELE** |
| **DITEP** Chase Account 3 | August 6, 2018 | Chase Bank | x7616 | Sammy Tickar (alias) | **DITEP** |
| **KEHINDE** Chase Account | October 10, 2018 | Chase Bank | x9826 | Ari Lawson (alias) | **KEHINDE** |

## The Co-Conspirators Solicited Potential Victims on Dating Websites

### *Victim 1*

42.     Victim 1 was a resident of Seminole, Florida.  In or around May 2017, Victim 1 began a romantic relationship with an individual using the name "Robert Wilson" on Match.com.  Victim 1 and "Wilson" communicated by email and text message.  "Wilson" represented to Victim 1 that he lived in Jackson, Mississippi and Cape Coral, Florida and

worked as a civil engineer. IP tracing revealed that whoever purported to be "Wilson" was in fact an individual located in Nigeria.

43.     In or around July 2017, "Wilson" informed Victim 1 that he was traveling to Hong Kong to complete a project and that he wanted to continue to communicate while he was overseas.  Shortly thereafter, "Wilson" requested Victim 1's assistance funding the project.  Beginning in or around July 2017 through in or around March 2018, "Wilson" directed Victim 1 to send money to numerous individuals who would forward the money to "Wilson" in Hong Kong.  After Victim 1 sent the money as directed, they were diverted to accounts controlled by the co-conspirators.

44.     At "Wilson's" direction, Victim 1 sent a total of $201,740 via bank wire transfer to numerous individuals, to include:

> e.  On or about November 29, 2017, a wire transfer in the amount of approximately $20,000 from Victim 1's bank account in Florida to the **USORO** Chase Account.  The same day as Victim 1's transfer there was an ATM cash withdrawal of $3000, and multiple ATM cash withdrawals on the proceeding days totaling $16,500 from that account.
>
> f.  On or about December 1, 2017, a wire transfer in the amount of approximately $20,000 from Victim 1's bank account in Florida to the **DITEP** Chase Account.  The same day as Victim 1's transfer there was an ATM cash withdrawal of $3000, and, on December 4, 2017, there were four ATM cash withdrawals totaling $13,500 from that account.

g. On or about March 27, 2018, a wire transfer in the amount of approximately $20,000 from Victim 1's bank account in Florida to the **OGUNDELE** Chase Account.  In the two days following the wire transfer, there were multiple ATM cash withdrawals totaling $21,500 from that account.

*Victim 2*

45. Victim 2 was a resident of Centerville, Ohio.  Beginning in or around May 2017, Victim 2 began a romantic relationship with an individual using the name "Carlos Hoods" on the online dating site Match.com.  Victim 2 and "Hoods" communicated by email and Google Hangouts.  "Hoods" represented to Victim 2 that he was an engineer and lived in Ohio.  IP tracing revealed that the individual purporting to be "Hoods" was an individual located in Nigeria.

46. In or around June 2017, "Hoods" informed Victim 2 that he was traveling to Oman to assist in the reconstruction of an oil refinery and asked her to send him iTunes gift cards.  Victim 2 complied and electronically transmitted iTunes gift cards to several individuals at "Hoods'" direction.

47. Shortly thereafter, "Hoods" asked Victim 2 for funds to complete the oil refinery and to help "Hoods" leave Oman.  "Hoods" directed Victim 2 to send approximately $760,000 to a number of different individuals who would forward the money to "Hoods," to include **OGUNDELE**, who was using the alias "John Olu."

48.     Between on or about June 24, 2017, and on or about June 27, 2017, Victim

2 sent approximately $196,500 via mail to **OGUNDELE** under the "John Olu" alias in

Norman, Oklahoma. These funds were funneled to members of the conspiracy.

*Victim 3*

49.     Victim 3 was a resident of Pryor, Oklahoma, within the Northern District of

Oklahoma. Beginning in or around February 2018, Victim 3 began a romantic relationship

with an individual using the name "Carlos Miguel Hood" on Match.com. Victim 3 and

"Hood" communicated by email and text message. "Hood" represented to Victim 3 that

he was originally from Tulsa, Oklahoma and worked as an environmental engineer. IP

tracing revealed that the individual purporting to be "Hood" in the email correspondence

was located in Nigeria.

50.     In or around March 2018, "Hood" informed Victim 3 that he needed to travel

to Muscat, Oman to work on an emergency project and requested that Victim 3 send him

iTunes gift cards so that he could purchase supplies for the project. Victim 3 agreed and

sent "Hood" $400 worth of iTunes gift cards electronically.

51.     On or about March 18, 2018, "Hood" informed Victim 3 that he wanted to

continue to communicate and develop their relationship while he was overseas. "Hood"

asked Victim 3 to purchase an internationally unlocked Samsung S9 phone and send it to

an address in Pennsylvania. Victim 3 agreed and, while in the Northern District of

Oklahoma, purchased an unlocked Samsung S9 phone and sent it, via FedEx, to an

individual located in Folcroft, Pennsylvania.

52.     On or about March 20, 2018, "Hood" sent a bouquet of flowers to Victim 3 at her residence. Shortly thereafter, "Hood" asked Victim 3 for assistance paying for hotel and security fees in Oman.   "Hood" directed her to send funds to an individual named "John Olu" on East 52nd Street, Brooklyn, New York. This address was a residence of **OGUNDELE**, who used the alias "John Olu."  On or about April 2, 2018, Victim 3 sent approximately $20,000 cash via the U.S. Postal Service from within the Northern District of Oklahoma to "John Olu" in Brooklyn, New York, who was, in fact, **OGUNDELE**.

53.     On or about April 4, 2018, "Hood" informed Victim 3 that he received the money but needed an additional $40,800 for security for his equipment.  Victim 3 agreed to assist "Hood," who directed Victim 3 to send funds to "John Olu" (in fact **OGUNDELE**) at the East 52nd Street address in Brooklyn, New York.  On or about April 5, 2018, Victim 3 sent approximately $41,000 cash via the U.S. Postal Service from within the Northern District of Oklahoma to **OGUNDELE**.

54.     Next, "Hood" informed Victim 3 that he needed funds for expenses related to the Oman project and directed Victim 3 to send funds to "Victor Moses," one of **OGUNDELE**'s aliases, at the East 52nd Street address.  On or about April 17, 2018, Victim 3 sent three cashier's checks, each in the amount of approximately $50,000, to "Victor Moses"—in fact, **OGUNDELE**—at the East 52nd Street address.  On or about April 18, 2019, two checks totaling approximately $100,000 were deposited into the **OGUNDELE** Chase Account.  The following day, there was an ATM cash withdrawal of

14

$30,000 and counter withdrawals totaling approximately $63,000 over the next ten days from the account.

55.    Shortly thereafter, "Hood" requested an additional $40,000 and assured Victim 3 that the project should net more than one million dollars. On or about April 26, 2018, Victim 3 sent approximately $40,000 via wire transfer to an account that had been opened using a fake passport at Chase Bank in the name of Michael Bryan, who was in fact **FNU LNU #3** (hereinafter, the "**FNU LNU #3** Chase Account").

56.    On or about May 4, 2018, "Hood" acknowledged that he received the funds sent by Victim 3 but was having difficulty receiving the cash from one of the cashier's checks sent by Victim 3. "Hood" also requested an additional $54,000 for the project. At "Hood's" direction, Victim 3 sent approximately $26,000 via wire transfer to the **FNU LNU #3** Chase Account, and approximately $26,000 to an account that had been opened using a fake passport held at Chase Bank in the name of Musa Bello of Dallas, Texas, who was in fact **FNU LNU #2**.

57.    In or around May 2018, "Hood" reported that progress had been made on his project and that funds would soon be deposited in Victim 3's account. "Hood" asked Victim 3 for an additional $86,000, dispersed in two cashier's checks, to be mailed to an address on Forest Lane in Dallas, Texas. On or about May 15, 2018, Victim 3 mailed the cashier's checks via FedEx: one check in the amount of approximately $42,000 payable to Musa Bello (**FNU LNU #2**), and the other, in the amount of approximately $44,000, payable to Michael Bryan (**FNU LNU #3**).

58.     In or about late May 2018, "Hood" informed Victim 3 that he needed an additional $132,000 for the project. "Hood" directed Victim 3 to send $40,000 to Ade Ade on Buckingham Drive in Norman, Oklahoma. The Buckingham Drive address is a residence associated with **ADEBARA** and "Ade Ade" is an alias used by **ADEBARA**. On or about May 25, 2018, Victim 3 sent approximately $40,000 in cash via the U.S. Postal Service to "Ade Ade"—who was, in fact, **ADEBARA**—at the Buckingham Drive address.

59.     In or around June 2018, "Hood" again asked Victim 3 for financial assistance. "Hood" informed Victim 3 that he needed an additional $28,000 by June 13, 2018 to complete the project so he could return to the United States. "Hood" directed Victim 3 to send the money to Ade Ade in Norman, Oklahoma. On or about June 13, 2018, Victim 3 sent an additional $28,000 to **ADEBARA**, using the "Ade Ade" alias, at the Buckingham Drive address.

60.     Victim 3 sent a total of approximately $546,000 in cash and goods to various individuals at "Hood's" direction.

## The Co-conspirators Transferred and Used the Fraudulently Obtained Proceeds

61.     On or about November 21, 2017, **DITEP** purchased a 2015 Mercedes Benz C300 vehicle for approximately $17,375 from Autos of Dallas in Plano, Texas with funds from the **DITEP** Chase Checking Account.

62.     Using the alias "Dede Kwame," **ADEBARA** issued the following cashier's checks from the **ADEBARA** Chase Account to other members of the conspiracy:

16

a.  a cashier's check in the amount of approximately $7545 to **DITEP**, who was using the "Edward Mark" alias on or about October 20, 2017; and a cashier's check in the amount of approximately $8250.50 to **DITEP**, who was using the "Edward Mark; " alias on or about October 24, 2017;

b.  a cashier's checks in the amount of approximately $1000 to **OBIEFUNA**, who was using the "Evan Carlson" alias on or about October 20, 2017; and

c.  a cashier's check in the amount of approximately $6525.50 to **USORO**, who was using the "Daniel Lawson" alias on or about October 21, 2017. On or about October 23, 2017, **USORO** deposited the cashier's check into the **USORO** Chase Account.

63.    On or about October 25, 2017, **ADEBARA** deposited approximately $4100 in cash into the **ADEBARA** Arvest Account.  On or about October 30, 2017, **ADEBARA** caused the wire transfer of approximately $25,045 from **ADEBARA** Arvest Account to Mercedes-Benz of Albuquerque.

64.    On or about October 31, 2017, **ADEBARA** made two deposits in the amount of approximately $10,000 into the **ADEBARA** Arvest Account.  Later, on or about March 2, 2018, **ADEBARA** caused the wire transfer of approximately $7000 from the **ADEBARA** Arvest Account #1 to IAA – Buyer Wires in New York.  IAA is an acronym for Insurance Auto Auctions.

65.     On or about October 23, 2017, **ADEBARA** deposited approximately $25,000 in cash into the TBA Stores Arvest Account.  That same day, **ADEBARA** caused the wire transfer of approximately $23,787 from the TBA Stores Arvest Account to Off Lease Only, Inc. with the "Reference Paul **USORO** Mercedes Benz C-300."

66.     On or about April 24, 2018, **OGUNDELE**, using the "Victor Moses" alias, caused the issuance of a cashier's check in the amount of $25,000 payable to Copart and drawn on the **OGUNDELE** Chase Account.  Copart is a vehicle auction house which sells salvaged vehicles and auto parts.

67.     On or about October 18, 2018, a UPS truck delivered a parcel to the residence located on Cord Circle in Norman, Oklahoma.

68.     On or about October 18, 2018, **ADEBARA, KEHINDE**, and **ADEDEJI** met at the residence located on Cord Circle in Norman, Oklahoma.

69.     On or about October 18, 2018, **ADEBARA** and **ADEDEJI** together departed the residence located on Cord Circle and traveled to and entered an Arvest Bank in Norman, Oklahoma.

70.     On or about October 18, 2018, **ADEBARA** and **ADEDEJI** departed the Arvest Bank in Norman, Oklahoma, and traveled together to Insurance Auto Auction in Oklahoma City, Oklahoma.

71.     On or about October 18, 2018, **ADEBARA** and **ADEDEJI** conducted a transaction at Insurance Auto Auction in Oklahoma City, Oklahoma.

72.     On or about December 12, 2018, while **ADEBARA** was out of the country, **ADEDEJI** drove to the residence at Cord Circle and retrieved parcels from a UPS driver. Afterward, **ADEDEJI** then traveled to an Arvest Bank and purchased money orders at different Wal-Mart stores.  That day, **ADEDJI** also visited a Chase Bank and Insurance Auto Auction.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATION
### [18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461(c)]

For the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c), the United States hereby realleges and incorporates the factual allegations contained in paragraphs 1 through 72.

Upon conviction of any of the offenses alleged in this Indictment, the defendants, **AFEEZ OLAJIDE ADEBARA**, also known as "Ade Ade," a/k/a "Sam Ade," a/k/a "Ben Obi," a/k/a "Sam Ola,"a/k/a "Alan Altman," a/k/a "Dede Kwame," **OLUWASEUM JOHN OGUNDELE**, a/k/a "Victor Moses," a/k/a "Mark Sobon," a/k/a "Theodore Segun Davies," a/k/a "John Olu," **JOSHUA NNANDOM DITEP**, a/k/a "Edward Mark," a/k/a "Phillip Lucas," a/k/a "Sammy Tickar," **PAUL USORO**, a/k/a "Daniel Lawson," **CHIBUZO GODWIN OBIEFUNA, JR.**, a/k/a "Chibby Obiefuna," a/k/a "Evan Carson," **JAMIU IBUKUN ADEDEJI**, **TOBILOBA KEHINDE**, a/k/a "Tobi Kehinde," a/k/a "Jeff Atto," a/k/a "Ari Lawson," **FNU LNU #1**, a/k/a "Smith Williams," **FNU LNU #2**, a/k/a "Musa Nelson Bello," and **FNU LNU #3**, a/k/a "Michael Wilson Bryan," shall forfeit to the United States any and all property, real or personal, involved in such offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). The property to be forfeited shall include, but is not limited to, the following:

**VEHICLES**

1. A 2015 Mercedes C300, VIN 55SWF4KB0FU037301, Oklahoma registration # DTA857;

2. A 2015 Mercedes C300, VIN 55SWF4KB0FU037721, Oklahoma registration # FPT630;

Pursuant to Title 21, Unites States Code, Section 853(p), as adopted by Title 28, United States Code, Section 2461(c), the defendants shall forfeit substitute property, up to the value of the property described above if, by any act or omission of the defendants, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c).

R. TRENT SHORES                              A TRUE BILL
UNITED STATES ATTORNEY

ROBERT ZINK
CHIEF, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____                      _/s/ Grand Jury Foreperson_____
CHRISTOPHER J. NASSAR                         Grand Jury Foreperson
Assistant United States Attorney

TRACEE PLOWELL, Assistant Chief
MICHELLE PASCUCCI, Trial Attorney